

Embassy of the United States of America

# Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, July 25, 2008

I, David H. Wilkins, Ambassador of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, being supplemental documents proposed to be used upon an application for the extradition from the United States of Anthony Reynolds, a.k.a. Oval Thompson who is wanted by the Province of Ontario to stand trial on one count of attempted murder, one count of attempted murder while using a firearm, one count of aggravated assault, one count of discharge of a firearm with the intent to endanger life, one count of assault with a weapon, one count of pointing a firearm, one count of using a firearm while committing aggravated assault and one count of using a firearm while committing assault with a weapon, are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed this 25th day of July, 2008.



David H. Wilkins
Ambassador
United States of America

Form 36- Foreign Servi



Department of Justice      Ministère de la Justice
Canada                     Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

IN THE MATTER OF the extradition of *Anthony REYNOLDS a.k.a. Oval Thompson* from the United States of America to Canada on charges of attempted murder, attempted murder while using a firearm, aggravated assault, discharge a firearm with the intent to endanger life, assault with a weapon, pointing a firearm, using a firearm while committing aggravated assault and using a firearm while committing assault with a weapon

I, Cathy Chalifour, acting senior counsel and extradition team leader, International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the extradition of *Anthony REYNOLDS a.k.a. Oval Thompson* who is wanted to stand trial on one count of attempted murder, one count of attempted murder while using a firearm, one count of aggravated assault, one count of discharge a firearm with the intent to endanger life, one count of assault with a weapon, one count of pointing a firearm, one count of using a firearm while committing aggravated assault and one count of using a firearm while committing assault with a weapon, all contrary to the *Criminal Code* of Canada.

THAT the documentation attached to this certificate is composed of:

-      the original Affidavit of law of JANET GALLIN, Crown Prosecutor, Ministry of Attorney General of Ontario; and

-      the original Affidavit of fact of Detective DARREN TOWNLEY, peace officer, Toronto Police Service, to which is attached:

-      as Exhibit A, certified true copy of the Information dated May 4, 2006;

-      as Exhibit B, certified true copy of the Warrant for Arrest dated May 4, 2006;



- 2 -

- as Exhibit C, certified true copy of the Information dated May 2, 2008

THAT Ian D. Scott whose original signature appears at the end of the Affidavit of JANET GALLIN is a Commissioner of Oaths in and for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Janet Gallin whose signature appears at the end of the Affidavit and exhibits thereto of DARREN TOWNLEY, is a Commissioner of Oaths and a Crown Prosecutor, in and for the Province of Ontario, Ministry of Attorney General of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Robyn Bensky who certified the copie of the Information dated May 4, 2006, is a clerk of the Ontario Court of Justice, in and for the Province of Ontario, having been duly appointed to that office, and as such is empowered to certify such documents of the said court.

THAT Terry Fields who certified the copie of the Warrant for Arrest dated May 4, 2006, is a clerk of the Ontario Court of Justice, in and for the Province of Ontario, having been duly appointed to that office, and as such is empowered to certify such documents of the said court.

THAT A. Frederick who certified the copie of the Information dated May 2, 2008, is a clerk of the Ontario Court of Justice, in and for the Province of Ontario, having been duly appointed to that office, and as such is empowered to certify such documents of the said court.

The Seal of the Minister of Justice of Canada is hereby affixed this 21th day of July, 2008.

Cathy Chalifour

| CANADA | ) | **HER MAJESTY THE QUEEN** |
| | ) | |
| PROVINCE OF ONTARIO | ) | **v.** |
| | ) | |
| TORONTO REGION | ) | **ANTHONY REYNOLDS** |

**IN THE MATTER of a request by Canada
for the Extradition of Anthony REYNOLDS from the United States of America
with respect to offences under the Criminal Code of Canada**

---

### AFFIDAVIT OF JANET GALLIN

---

I, Janet Gallin, of the Township of Tiny, in the County of Simcoe, in the Province of Ontario, Canada, a lawyer for the Ministry of the Attorney General for the Province of Ontario, Canada, MAKE OATH AND SAY AS FOLLOWS:

## A.    QUALIFICATIONS

1.    I am a Barrister and Solicitor qualified to practice law in the Province of Ontario, Canada, since March 1991.  Since March 1991, I have practiced law in the employment of the Crown Law Office – Criminal of the Ministry of the Attorney General for the Province of Ontario, with the exception of an approximate one year period from October 1993 to October 1994 when I was in private practice and the year 2006 when I was on a self-funded leave of absence.  I presently hold the position of Counsel in the Crown Law Office – Criminal.

2

2.     As a result of my training, my employment, and my experience, I am very knowledgeable about Canadian criminal law.

3.     The Crown Law Office - Criminal, is a branch of the Criminal Law Division of the Ministry of the Attorney General.  At present it is staffed by over 70 lawyers, each of whom specialize in criminal law.  The responsibilities of counsel with the Crown Law Office - Criminal include representing the Crown in all criminal appeals for the Province of Ontario before the Ontario Court of Appeal and the Supreme Court of Canada.  In addition, counsel with the Crown Law Office - Criminal conduct special prosecutions, typically involving offences against the administration of justice.

4.     The Crown Law Office - Criminal also has been directed to exercise responsibility on behalf of the Attorney General of Ontario with respect to applications by the Attorney General of Ontario for the extradition to Canada from foreign jurisdictions of persons charged in Ontario with offences contrary to the Criminal Code of Canada.  In addition, the Crown Law Office - Criminal is responsible for carriage of applications for assistance by Canada (on behalf of Ontario) and made to Canada under the Mutual Legal Assistance Treaty (MLAT).

5.     From 1991 to the present time, I have represented the Crown on appeals at the Ontario Court of Appeal and the Supreme Court of Canada.  My title within the Crown Law Office - Criminal is "Research Counsel."  I do less litigation than my colleagues but provide research assistance to Crown Counsel throughout Ontario on criminal law matters.  I have also had

3

carriage of requests for extradition involving the United States, which required the preparation

of an affidavit of law.   Based upon my training and experience, I am an expert in the criminal

laws and procedure of Canada.


## B.     THE EXTRADITION REQUEST

6.     Canada is seeking the extradition of Anthony REYNOLDS on the following charges, all

of which are alleged to have been committed on or about December 22, 2005 at Weston Road

and Church Street, in the City of Toronto, Toronto Region, Ontario, Canada:

      a.     Attempted Murder *Criminal Code* s. 239 (count 1):

          Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in

          the City of Toronto, in the Toronto Region did attempt to murder Felix TWUM by

          shooting him contrary to the *Criminal Code.*

      b.     Attempted Murder While Using a Firearm *Criminal Code* s. 239(a) (count 2)

          Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in

          the City of Toronto, in the Toronto Region did attempt to murder Felix TWUM

          while using a firearm by shooting him contrary to the *Criminal Code.*

      c.     Aggravated Assault *Criminal Code* s.  268 (count 3)

          Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in

          the City of Toronto, in the Toronto Region did maim Felix TWUM thereby

          committing an aggravated assault contrary to the *Criminal Code.*

      d.     Discharge Firearm Endanger Life *Criminal Code* s. 244(b) (count 4)

4

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region with intent to endanger the life of Felix TWUM discharge a firearm at Felix TWUM contrary to the *Criminal Code*.

e.    Assault With a Weapon *Criminal Code* s. 267(a) (count 5)

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did in committing an assault on Felix TWUM carry a weapon to wit a firearm contrary to the *Criminal Code*.

f.    Pointing a Firearm *Criminal Code* s. 87 (count 6)

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did without lawful excuse point a firearm to wit a handgun at Felix TWUM contrary to the *Criminal Code*.

g.    Use of Firearm while committing indictable offence of Aggravated Assault *Criminal Code* s. 85 (count 7)

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did use a firearm to wit a handgun while committing the indictable offence of Aggravated Assault contrary to the *Criminal Code*.

h.    Use of Firearm while committing indictable offence of Assault with a weapon *Criminal Code* s. 85 (count 8)

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did use a firearm to wit a handgun while committing the indictable offence of Assault with a weapon contrary to the

5

*Criminal Code.*

7.    These offences are set out as counts 1 to 8 in the Information sworn on May 2, 2008 by

Gary Sangha of the Toronto Police Service (Exhibit "C" to the affidavit of Darren Townley).  A

previous Information (Exhibit "A" to the affidavit of Darren Townley) was sworn on May 4,

2006.  Also on May 4, 2006 a warrant of arrest was issued by His Worship Justice of the Peace

Stephen Waisberg of the Ontario Court, Provincial Division (Exhibit "B" to the affidavit of

Darren Townley).  On the advice of Crown Counsel the May 2, 2008 Information was sworn to

replace the May 4, 2006 Information, but the May 4, 2006 warrant of arrest is still in full force

and effect throughout Canada.   When this matter comes before a Canadian Court, the

Informations sworn prior to May 2, 2008 will be withdrawn and the Crown will ultimately be

proceeding on the Information which is Exhibit "C" to the affidavit of Darren Townley.  The

Informations and Warrant that are exhibits to Darren Townley's affidavit are certified true copies.

8.    Canada is **not** seeking extradition on the following counts which were set out in the first

Information which was sworn May 4, 2006:

    a.    Possession of an Unregistered Restricted Weapon *Criminal Code* s. 91(1) (count

        6)

    b.    Unauthorized Presence of a Firearm in a Motor Vehicle *Criminal Code* s. 94(1)

        (count 8)

    c.    Attempt Fraud Over *Criminal Code* s. 380 (count 9)

6

9.     I have carefully reviewed the affidavit of Darren Townley, and the Exhibits attached to it, which accompany this extradition application.  Included in those Exhibits are certified copies of the Information and Warrant for Arrest, which I have carefully reviewed. Based on the affidavit and the Exhibits I believe that Anthony REYNOLDS is charged with the counts outlined in paragraph 6 of my affidavit with respect to incidents which allegedly occurred in the City of Toronto, Ontario on or about December 22, 2005.


C.     *Criminal Code* PROVISIONS


10.    The *Criminal Code of Canada*, Revised Statutes of Canada, 1985, Chapter C-46, as amended, is a statute enacted by the Parliament of Canada.  It contains the law relating to criminal offences for the whole of Canada.  It therefore applies to Ontario.  The particular sections of the *Criminal Code* relevant to the instant extradition request were in force on the day of the alleged offence.  As noted below, some of the offence provisions have since been amended, but those amendments do not affect the charges against REYNOLDS.


11.    Under Canadian law, criminal offences are divided into three categories:

    a.     indictable offences;

    b.     summary conviction offences;

    c.     offences that are, at the election of the prosecution, either indictable or summary conviction (referred to also as "hybrid" offences).

7

12.    Canadian law has abolished the common law division of offences into felonies and misdemeanours.  However, indictable offences are roughly equivalent to felonies and summary conviction offences are roughly equivalent to misdemeanours.  Generally speaking, indictable offences are the most serious offences carrying the most serious penalties; summary conviction offences are generally less serious offences and carry less severe penalties.  Unless otherwise provided by law, a summary conviction offence is punishable by a maximum sentence of 6 months jail or a $2000 fine or both (s. 787(1) of the *Criminal Code*) and is subject to a 6 month limitation period.  Some of the offences with which REYNOLDS is charged are indictable; others are at the election of the prosecution (hybrid offences) but since the Crown has not yet made a formal  election on these charges, they are deemed to be indictable until the prosecution makes an election.  In any event, in this case, the Crown will be electing to proceed by indictment in all hybrid offences, meaning that there are no limitation periods with respect to the charged offences.

**Definitions**

13.    Before turning to a description of the offences themselves, here are certain definitions which are applicable to some of the offences.  The *Criminal Code* contains a definition section (section 2) which applies to all of the *Criminal Code.*

***Definitions applying to Criminal Code***

        **"Bodily Harm"** means any hurt or injury to a person that interferes with the health or

8

comfort of the person and that is more than merely transient or trifling in nature

**"Firearm"** means a barrelled weapon from which any shot, bullet or other projectile can be discharged and that is capable of causing serious bodily injury or death to a person, and includes any frame or receiver of such a barrelled weapon and anything that can be adapted for use as a firearm (Section 2, *Criminal Code*)

**"Weapon"** means any thing used, designed to be used or intended for use
   (a)   in causing death or injury to any person, or
   (b)   for the purpose of threatening or intimidating any person
and, without restricting the generality of the foregoing, includes a firearm  (Section 2, *Criminal Code*)

14.    I now turn to the offences with which REYNOLDS is charged.  These provisions are as they existed during the time-frame of the alleged offences.  They were duly enacted and proclaimed into force at the time of the alleged offences and would be applicable in the event of a trial in this case.

**ATTEMPTED MURDER *CRIMINAL CODE* s. 239(b) & ATTEMPTED MURDER WHILE USING A FIREARM *Criminal Code*  239(a) (Counts 1 and 2)**

15.    The offences of "attempted murder" and the offence of "attempted murder while using a firearm" are set out in ss. 239(b) and 239(a) of the *Criminal Code* respectively, and read as follows at the time REYNOLDS is alleged to have committed the offence[1]:

**SECTION 239.**
*Attempt to commit murder*

---

[1] Section 239 of the *Criminal Code* was amended and these amendments came into force May 1, 2008, but these amendments will not apply to the prosecution of REYNOLDS because he will be tried under the section which was in effect at the time he committed the offence.  If the new provision contained a lesser punishment, he would have been entitled to the benefit of that lesser punishment, but in fact the new legislation increases the penalties thus REYNOLDS is entitled to the benefit of the lesser punishment which was in effect at the time he allegedly committed this offence.

9

239. Every person who attempts by any means to commit murder is guilty of an indictable offence and liable

    (a) where a firearm is used in the commission of the offence, to imprisonment for life and to a minimum punishment of imprisonment for a term of four years; and

    (b) in any other case, to imprisonment for life.

16.    "Attempt" is set out in the *Criminal Code* as follows:

**SECTION 24.**
*Attempts*
24. (1) Every one who, having an intent to commit an offence, does or omits to do anything for the purpose of carrying out the intention is guilty of an attempt to commit the offence whether or not it was possible under the circumstances to commit the offence.
*Question of law*
(2) The question whether an act or omission by a person who has an intent to commit an offence is or is not mere preparation to commit the offence, and too remote to constitute an attempt to commit the offence, is a question of law.

17.    "Murder" is set out in the *Criminal Code* as follows:

**SECTION 229.**
*Murder*
229. Culpable homicide is murder
(a) where the person who causes the death of a human being
    (i) means to cause his death, or
    (ii) means to cause him bodily harm that he knows is likely to cause his death, and is reckless whether death ensues or not;
(b) where a person, meaning to cause death to a human being or meaning to cause him bodily harm that he knows is likely to cause his death, and being reckless whether death ensues or not, by accident or mistake causes death to another human being, notwithstanding that he does not mean to cause death or bodily harm to that human being; or
(c) where a person, for an unlawful object, does anything that he knows or ought to know is likely to cause death, and thereby causes death to a human being, notwithstanding that he desires to effect his object without causing death or bodily harm to any human being.

18.    In order to prove the offence of attempted murder, the Crown must prove beyond a

reasonable doubt that the accused had a specific intent to kill.  Intention may be inferred from the

10

facts surrounding the offence.

19.    If found guilty of committing attempted murder while using a firearm, REYNOLDS

would face a minimum sentence of four years and a maximum sentence of life in prison.

## AGGRAVATED ASSAULT *CRIMINAL CODE* s. 268

20.    The offence of "aggravated assault" is set out in s. 268 of the *Criminal Code,* the relevant

portion of which reads as follows:

> **SECTION 268.**
> *Aggravated assault*
> 268. (1) Every one commits an aggravated assault who wounds, maims, disfigures or
> endangers the life of the complainant.
> *Punishment*
> (2) Every one who commits an aggravated assault is guilty of an indictable offence and
> liable to imprisonment for a term not exceeding fourteen years.

21.    Section 265 of the *Criminal Code* sets out the offence of assault and stipulates at

subsection 2 that it applies to all forms of assault, which includes the offence of "aggravated

assault".  Section 265 reads as follows:

> **SECTION 265**
> *Assault*
> 265. (1)  A person commits an assault when
>     (a)  without the consent of another person, he applies force intentionally to that other
>     person, directly or indirectly;
>     (b)  he attempts or threatens, by an act or a gesture, to apply force to another person,
>     if he has, or causes that other person to believe on reasonable grounds that he has,
>     present ability to effect his purpose; or
>     (c)  while openly wearing or carrying a weapon or an imitation thereof, he accosts or
>     impedes another person or begs.

11

*Application*
(2)  This section applies to all forms of assault, including sexual assault, sexual assault with a weapon, threats to a third party or causing bodily harm and aggravated sexual assault.
*Consent*
(3)  For the purposes of this section, no consent is obtained where the complainant submits or does not resist by reason of

> (a) the application of force to the complainant or to a person other than the complainant;
> (b) threats or fear of the application of force to the complainant or to a person other than the complainant;
> (c) fraud; or
> (d) the exercise of authority.

*Accused's belief as to consent*
(4)  Where an accused alleges that he believed that the complainant consented to the conduct that is the subject-matter of the charge, a judge, if satisfied that there is sufficient evidence and that, if believed by the jury, the evidence would constitute a defence, shall instruct the jury, when reviewing all the evidence relating to the determination of the honesty of the accused's belief, to consider the presence or absence of reasonable grounds for that belief.

22.     Therefore, the maximum sentence were REYNOLDS to be convicted of aggravated

assault is 14 years.

## DISCHARGE FIREARM ENDANGER LIFE *CRIMINAL CODE* s. 244(b)

23.     The offence of "discharge firearm endangering life" is set out in s. 244(b) of the *Criminal*

*Code* and read as follows at the time REYNOLDS is alleged to have committed the offence[2]:

---

   [2] Section 244 of the *Criminal Code* was amended and these amendments came into force May 1, 2008, but these amendments will not apply to the prosecution of REYNOLDS because he will be tried under the section which was in effect at the time he committed the offence.  If the new provision contained a lesser punishment, he would

12

**SECTION 244.**
*Causing bodily harm with intent – firearm*
244. Every person who, with intent
    (a) to wound, maim or disfigure any person,
    (b) to endanger the life of any person, or
    (c) to prevent the arrest or detention of any person,
discharges a firearm at any person, whether or not that person is the person mentioned in paragraph (a), (b) or (c), is guilty of an indictable offence and liable to imprisonment for a term not exceeding fourteen years and to a minimum punishment of imprisonment for a term of four years.

24.    As noted above in paragraph 13, a firearm is defined by s. 2 of the *Criminal Code* as

follows:

> **"Firearm"** means a barrelled weapon from which any shot, bullet or other projectile can be discharged and that is capable of causing serious bodily injury or death to a person, and includes any frame or receiver of such a barrelled weapon and anything that can be adapted for use as a firearm.

25.    Thus if convicted of the offence of Discharging a Firearm Endangering Life,

REYNOLDS would be subject to a minimum sentence of four years and a maximum of 14 years.

**ASSAULT WITH A WEAPON** *CRIMINAL CODE* **s. 267(a)**

26.    The offence of "assault with a weapon" is set out in s. 267(a) of the *Criminal Code* and

reads as follows:

> **SECTION 267**
> *Assault with a weapon or causing bodily harm*
> 267.    Every one who, in committing an assault,

---

have been entitled to the benefit of that lesser punishment, but in fact the new legislation increases the penalties thus REYNOLDS is entitled to the benefit of the lesser punishment which was in effect at the time he allegedly committed this offence.

13

(a) carries, uses or threatens to use a weapon or an imitation thereof, or
(b) causes bodily harm to the complainant,
is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years or an offence punishable on summary conviction and liable to imprisonment for a term not exceeding eighteen months.

27.     As noted above, "weapon" is defined so as to include "any thing used, designed to be used or intended for use in causing death or injury to any person, or for the purpose of threatening or intimidating any person and, without restricting the generality of the foregoing, includes a firearm".

28.     Section 265 of the *Criminal Code* sets out the offence of assault and stipulates at subsection 2 that it applies to all forms of assault, which includes the offence of "assault with a weapon".  Section 265 is set out above at paragraph 21.   Thus for the offence of assault with a weapon, REYNOLDS would be subject to a maximum sentence of 10 years if convicted.

**POINTING A FIREARM *CRIMINAL CODE* s. 87**

29.     The offence of "pointing a firearm" is set out in s. 87 of the *Criminal Code* and reads as follows:

**SECTION 87.**
*Pointing a firearm*
87. (1) Every person commits an offence who, without lawful excuse, points a firearm at another person, whether the firearm is loaded or unloaded.
*Punishment*
(2) Every person who commits an offence under subsection (1)
      (a) is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years; or

14

(b) is guilty of an offence punishable on summary conviction.

30.     Thus for the offence of pointing a firearm, REYNOLDS would be subject to a maximum

sentence of 5 years if convicted.

## USE FIREARM IN COMMISSION OF INDICTABLE OFFENCE, CRIMINAL CODE s. 85 (1)

31.     Section 85 of the *Criminal Code* makes it an offence to use a firearm in the commission

of an indictable offence.  Thus the Crown must first prove that the accused has commited an

indictable offence and then prove the use of the firearm in the course of that offence.  If

convicted of this offence, the accused is subject to a mandatory minimum sentence of one year

for a first offence and a mandatory minimum sentence of three years for a second or subsequent

offence.  Certain offences are excluded from the operation of s.85, because their penalty sections

call for higher mandatory minimum sentences if a firearm was used in their commission.  Section

85 read as follows at the time REYNOLDS allegedly committed the offences[3]:

> **SECTION 85.**
> *Using firearm in commission of offence*

---

[3]  Section 85 of the *Criminal Code* was amended and these amendments came into force May 1, 2008, but these amendments will not apply to the prosecution of REYNOLDS because he will be tried under the section which was in effect at the time he committed the offence.  If the new provision contained a lesser punishment, he would have been entitled to the benefit of that lesser punishment, but in fact the new legislation increases the penalties thus REYNOLDS is entitled to the benefit of the lesser punishment which was in effect at the time he allegedly committed this offence.

15

85. (1) Every person commits an offence who uses a firearm

    (a) while committing an indictable offence, other than an offence under section 220 (criminal negligence causing death), 236 (manslaughter), 239 (attempted murder), 244 (causing bodily harm with intent - firearm), 272 (sexual assault with a weapon) or 273 (aggravated sexual assault), subsection 279(1) (kidnapping) or section 279.1 (hostage-taking), 344 (robbery) or 346 (extortion),

    (b) while attempting to commit an indictable offence, or

    (c) during flight after committing or attempting to commit an indictable offence,

    whether or not the person causes or means to cause bodily harm to any person as a result of using the firearm.

*Using imitation firearm in commission of offence*

(2) Every person commits an offence who uses an imitation firearm

        (a) while committing an indictable offence,

        (b) while attempting to commit an indictable offence, or

(c) during flight after committing or attempting to commit an indictable offence, whether or not the person causes or means to cause bodily harm to any person as a result of using the imitation firearm.

*Punishment*

(3) Every person who commits an offence under subsection (1) or (2) is guilty of an indictable offence and liable

(a) in the case of a first offence, except as provided in paragraph (b), to imprisonment for a term not exceeding fourteen years and to a minimum punishment of imprisonment for a term of one year;

(b) in the case of a first offence committed by a person who, before January 1, 1R.S.C. 1985, c. C-38, s. 978, was convicted of an indictable offence, or an attempt to commit an indictable offence, in the course of which or during flight after the commission or attempted commission of which the person used a firearm, to imprisonment for a term not exceeding fourteen years and to a minimum punishment of imprisonment for a term of three years; and

(c) in the case of a second or subsequent offence, to imprisonment for a term not exceeding fourteen years and to a minimum punishment of imprisonment for a term of three years.

*Sentences to be served consecutively*

(4) A sentence imposed on a person for an offence under subsection (1) or (2) shall be served consecutively to any other punishment imposed on the person for an offence arising out of the same event or series of events and to any other sentence to which the person is subject at the time the sentence is imposed on the person for an offence under subsection (1) or (2).

32.    As noted above, "firearm" is defined as "a barrelled weapon from which any shot, bullet or

16

other projectile can be discharged and that is capable of causing serious bodily injury or death to a person, and includes any frame or receiver of such a barrelled weapon and anything that can be adapted for use as a firearm".

33.      If REYNOLDS is convicted of an offence under section 85 of the *Criminal Code*, he would be subject to a mandatory minimum sentence of one year in prison, in addition to the penalty for the underlying offence in which he used the firearm.

## D.      NO LIMITATION PERIOD IN THIS CASE

34.      In Canada there is no statutory limitation period of general application in respect of indictable offences.  No particular limitation period applies to the offences at issue in this case.  In Canadian law, the rule relating to the prosecution of the indictable offences is that, in the absence of a specific statutory provision to the contrary, the initiation of a prosecution of an indictable offence is not barred by the passage of any period of time.

## E.      OPINION

35.      I have carefully read and reviewed the Information charging the accused, Anthony REYNOLDS, with the offences set out in paragraph 6 supra.

36.      I have reviewed the Warrant of Arrest for the accused, Anthony REYNOLDS.

17

37.    I have carefully read and reviewed the affidavit of Darren Townley.

38.    In Canada, in order to find an accused guilty of an offence contrary to the *Criminal Code*, the trier of fact must be satisfied that the guilt of the accused has been established beyond a reasonable doubt.

39.    In my opinion, the evidence disclosed by the affidavit of Darren Townley, and the Exhibits attached thereto, make out a *prima facie* case of the guilt of Anthony REYNOLDS on the counts outlined in paragraph 6 above.  That is to say, a reasonable jury, properly instructed in the law, could on that evidence find beyond a reasonable doubt that Anthony REYNOLDS is guilty of the charges set out in paragraph 6 above, contrary to the *Criminal Code of Canada*.  I am also of the opinion that these offences are properly triable in the Province of Ontario, and that the criminal courts in the Province of Ontario have jurisdiction to try Anthony REYNOLDS for these offences.

40.    As a matter of Canadian Constitutional Law, offences under the *Criminal Code of Canada* are prosecuted by provincial law officers of the Crown.  In Ontario, the Ministry of the Attorney General of Ontario is responsible for all such prosecutions. The Attorney General of Ontario thereby has, under s. 77 of the *Extradition Act*, Statutes of Canada, 1999, Chapter 18, as amended, the authority to make an extradition request in the present case.

41.    The offences listed in paragraph 6  above, are not political offences or offences of a political

18

character.  The offences were not charged for the purpose of prosecuting Anthony REYNOLDS on account of his race, religion, nationality or political opinion.  If returned to Canada, Anthony REYNOLDS will not be prejudiced by reason of his race, religion, nationality or political opinion.

42.    This affidavit is made in good faith in support of a request by Canada for the extradition of Anthony REYNOLDS for the aforementioned criminal offences, and is made for no improper purpose.

SWORN BEFORE ME at the City                )
of Toronto in the Toronto Region            )
in the Province of Ontario, Canada          )
this  16   day of   June            ,       )
                                            )
                                            )
                                            )
Commissioner, etc

Ian D. Scott

JANET GALLIN

THE MATTER of the request by Canada
for the extradition of ANTHONY REYNOLDS

---

## AFFIDAVIT OF JANET GALLIN

---

**MINISTRY OF THE ATTORNEY GENERAL
FOR THE PROVINCE OF ONTARIO**
Crown Law Office – Criminal
720 Bay Street, 10th Floor
TORONTO, Ontario
M5G 2K1

**Janet Gallin**
Tel: 416-326-2303
Fax: 416-326-4656
Email: Janet.Gallin@ontario.ca

| CANADA | ) | HER MAJESTY THE QUEEN |
| PROVINCE OF ONTARIO | ) | VS |
| TORONTO REGION | ) | ANTHONY REYNOLDS |

IN THE MATTER of the request by Canada for the extradition of Anthony REYNOLDS from the United States of America with respect to offences under the *Criminal Code of Canada*

---

## AFFIDAVIT OF DARREN TOWNLEY

---

I, DARREN TOWNLEY, of the City of Toronto, in the Province of Ontario, a police officer, MAKE OATH AND SAY AS FOLLOWS:

1.     I am a member of the Toronto Police Service and have been so employed since May 1991. I presently hold the rank of Detective and I am assigned to the 31 Division Criminal Investigation Bureau in a plainclothes capacity.

2.     I am currently the primary investigator in the case of Regina v. Anthony REYNOLDS. I have been involved in this investigation since December 22, 2005.   I have read the case file in relation to this matter and have reviewed other officers' notes. I therefore have personal knowledge of contents of this affidavit except where my knowledge is based on information and belief in which case I have identified the source of my information and belief.

## A.     CHARGES FOR WHICH EXTRADITION IS SOUGHT

3.     Canada is seeking the extradition of Anthony REYNOLDS (hereinafter "REYNOLDS" or "the accused" for the offences listed below, all of which occurred at Weston Road and Church Street, in the City of Toronto, Toronto Region, Ontario, Canada, on or about December 22, 2005:

   a.     Attempted Murder *Criminal Code*, section 239 (count 1)

2

b.   Attempted Murder While Using a Firearm *Criminal Code*, section 239(a) (count 2)

c.   Aggravated Assault *Criminal Code*, section 268 (count 3)

d.   Discharge Firearm Endanger Life *Criminal Code*, section 244(b) (count 4)

e.   Assault With a Weapon *Criminal Code*, section 267(a) (count 5)

f.   Pointing a Firearm *Criminal Code*, section 87 (count 6)

g.   Using Firearm while committing Aggravated Assault *Criminal Code*, section 85 (count 7)

h.   Using Firearm while committing Assault with a Weapon *Criminal Code*, section 85 (count 8)

4.   The accused was originally charged in an information (Information #1) which I swore on May 4, 2006 and a warrant was issued for the arrest of Anthony REYNOLDS by His Worship Justice of the Peace Stephen WAISBERG of the Ontario Court, Provincial Division. The warrant was issued with an Ontario wide radius. Subsequently the radius of the Warrant was extended to be a Canada wide warrant.  A certified true copy of the information sworn on May 4, 2006 accompanies this, my affidavit and is marked as Exhibit "A".  A certified true copy of the Warrant for Arrest accompanies this, my affidavit and is marked as Exhibit "B".

5.   On the advice of Crown counsel a second information was sworn on April 17, 2008, but again on the advice of Crown counsel a third information was sworn on May 2, 2008 by Police Officer Gary Sangha before Justice of the Peace Robert H. Lewin.  Canada seeks REYNOLDS extradition on the counts set out in this third Information.  A certified true copy of the third information sworn on May 2, 2008 accompanies this, my affidavit and is marked as Exhibit "C". The warrant for arrest on the first Information remains in force (Exhibit "B").

**B.    BRIEF SUMMARY OF THE OFFENCES**

6.    As outlined in more detail below, the victim of this offence was Felix TWUM.  The victim was involved in selling a used car to REYNOLDS (who he knew by the alias Oval THOMPSON).  The deal fell through and the victim refused to refund $500 to REYNOLDS, who wanted the money back.  Subsequently, on December 19, 2005, the two got into a physical altercation about the money and the victim hit REYNOLDS several times in the face.  Three days later, on December 22, 2005, REYNOLDS drove up to the victim, said "fuck you" and shot him with a handgun.  The victim tried to reach his own vehicle, but REYNOLDS shot him again. REYNOLDS then fled the scene in a black SUV, leaving the victim lying in the street.

7.    The police received information that "Oval THOMPSON'S" real name was Anthony REYNOLDS.  The victim was able to select REYNOLDS' driver's licence picture from a photo line-up as the man who shot him.  Other witnesses also identified REYNOLDS' picture as that of the man they knew as Oval THOMPSON, who was involved in the used car transaction with the victim.

8.    The police located a total of two 9mm shell casings and three 9mm projectiles and 1 copper jacket at the scene of the crime, suggesting that at least three shots were fired.

9.    The victim was shot two or three times, but no bullets lodged in his body.  He is now a paraplegic, lost a kidney, and has damage to his lungs and liver.

**C.    MORE DETAILED OVERVIEW OF INVESTIGATIONS PERTAINING TO OFFENCES**

10.    I have reviewed the reports and officer's notes in regards to this occurrence and gathered the following information.

11.    Police Constable DYKE #7848 and Police Constable MACKEY #8479 are members of the Toronto Police Service and at the time of this occurrence were performing their duties together in 31 Division in the Community Response Unit.

a.    On Thursday the 22 of December 2005 Police Constable DYKE and Police

4

Constable MACKEY were working in a uniform capacity patrolling the boundaries of 31 Division.

b.    At about 4:42pm Police Constable DYKE and Police Constable MACKEY responded to a radio call detailed from the Toronto Police Communications center, this call was designated as event #L96038. The call was for a sound of gunshots at Weston Road and Church Street, in the City of Toronto

c.    When officers arrived on scene they observed a crowd of people at the Plaza located on the southeast corner of Weston Road and Church Street. The crowd was waving the officers to their location

d.    When the officers pulled into the plaza they observed a male hereafter referred to as the victim lying on his side near the plaza entrance/exit at Church Street.

e.    The Officers observed that the victim was bleeding from the area of his lower back and waist area and commenced first aid

f.    Officers while applying first aid noticed apparent gunshot wounds in the victim's buttock, lower back and upper right chest.

g.    The victim identified himself as Felix TWUM and advised he was 26 years old

h.    At this time ambulance number 853 attended the scene and took over medical treatment of the victim.

i.    Shortly after, additional police officers arrived to take over the protection and preliminary investigation at the scene.

j.    Police Constable MACKEY received information from a citizen that the suspect was a black male, operating a black Pathfinder motor vehicle.

k.    Police Constable DYKE rode in the rear of the ambulance with the victim. During the ride in the ambulance Police Constable DYKE asked the victim several questions in regards to the suspect and his last known direction of travel. The

5

victim advised at this time that he did not know.

l.   Once on scene at Sunnybrook hospital several Doctors including Dr Russell MacDonald treated the victim. Dr Macdonald advised that there were numerous bullet entrance/exit wounds however there were no bullets in the victim's body. It was believed that the victim had been shot between 2-3 times and he was possibly paralyzed from the waist down.

m.   Police Constable DYKE then reported that the victim was taken to Sunnybrook operating room #1 M2 220 to be operated on.

12.   Police Constable TAVARES #7744 is a member of the Toronto Police Service and on Thursday the 22nd of December 2005 Police Constable TAVARES was working in a uniformed capacity attached to "A" platoon patrolling the boundaries of 31 Division

a.   at about 4:42pm Police Constable TAVARES received a radio call to attend the Weston Road and Church Street area in Toronto in regards to a call for service for a shooting

b.   Police Constable TAVARES arrived on scene and was detailed to tape off the area to protect the scene and then to canvass the area for potential witnesses and evidence of the offence.

c.   Police Constable TAVARES received information from a citizen that someone from the Moonshine Salon, which is the premise the victim had exited just prior to being shot had taken the victim's phone. The citizen advised that this male was a male black with an afro and a yellow shirt

d.   Police Constable TAVARES attended the salon and spoke to the male who handed over the Sony Ericsson cellular phone belonging to the victim. This male identified himself as George NELSON with a date of birth of 1963/06/30.

e.   Police Constable TAVARES canvassed the area and spoke with several citizens

6

who had heard the gunshots and observed a black van or sports utility vehicle fleeing the scene.

f.   Police Constable TAVARES then re-attended the Moonshine Salon and spoke to the owner Dennis JOHNSON with a date of birth of 1976/02/10. Mr. JOHNSON advised that the victim was a regular customer of his and that the victim had attended the barbershop for a "clean-up". Mr. JOHNSON further advised that when the victim left the barbershop he heard a couple of bangs and saw him lying on the floor. Police Constable TAVARES advised both Mr. JOHNSON and Mr. NELSON to attend 31 Division for a statement.

g.   Police Constable TAVARES then stood by and guarded the crime scene.

h.   At about 11:00 pm Police Constable TAVARES accompanied the victim's vehicle #AXEV-178 a Mercedes Benz to the Toronto Police Forensic Identification offices on Jane Street in the City of Toronto.

13.   Police Constable Maclean #9039 is a member of the Toronto Police Service and on Thursday the 22nd of December was working in a uniform capacity attached to "A" platoon patrolling the boundaries of 31 Division. Police Constable MACLEAN was working as Police Constable TAVARES' escort on this date.

a.   at about 4:42pm Police Constable MACLEAN received a radio call to attend the Weston Road and Church Street area in Toronto in regards to a call for service for a shooting

b.   When Police Constable MACLEAN arrived on scene, he observed a blue Mercedes and the victim lying in close proximity to it.

c.   At about 4:58pm Police Constable MACLEAN interviewed a witness who identified himself as Robert PENNY. Mr. PENNY advised that he was in the area of Church Street and Weston Road and heard what he believed to be approximately seven gunshots. At this time he turned and observed a black male

7

with a toque pulled down over his ears operating a black Ford 4X4. Mr. Penny advised that the black male was the only occupant in the vehicle and he "whipped" by him not looking at traffic, drove out onto Weston Road and went northbound in the south bound lanes cutting traffic off.

d.   Police Constable MACLEAN was then detailed by Sergeant RAMJATTAN #2360 to record all of the license plate numbers of the vehicles parked in the lot at Weston Road and Church Street.

e.   At about 5:10 pm Police Constable MACLEAN accompanied Police Constable TAVARES into the Moonshine Salon and spoke with George NELSON the male who had taken the victim's phone after the shooting.

f.   Police Constable MACLEAN and TAVARES then guarded the scene

g.   At about 10:28 pm Police Constable MACLEAN sealed the victim's Mercedes with police seals

    i)    Front driver's door-956537

    ii)   Front passenger door- 956538

    iii)  Trunk-956539

    iv)   Hood-956540

h.   At about 11:00 pm Mechanic HARRIS of Toronto Police Jane Garage transported the victim's car #AXEV-179 a Mercedes Benz to the Toronto Police Forensic Identification Services garage at 2050 Jane Street for Forensic exam.

14.   At about 5:34 pm, I along with Detective Constable HOPKINS #8058 attended the crime scene at Weston Road and Church Street (2159 Weston Road). Detective Constable HOPKINS is employed by the Toronto Police Service and currently assigned to the 31 Division Criminal Investigative Bureau.

8

a.     At about 5:20 pm while on route to the crime scene I received information from Police Constable Gord WONG#8483 who is a member of the Toronto Police Service. Police Constable WONG advised me that he was at Sunnybrook Hospital with the victim. I advised Police Constable WONG to contact me again when he had an update on the victim's condition.

b.     At about 5:23 pm I notified Detective Constable HUBBARD of Toronto Police Forensic Identification Services of the incident and requested that they attend the scene.

c.     At about 5:32pm I received another call from Police Constable WONG advising that the victim had been shot several times and was in a life threatening condition.

d.     Once on scene I spoke with Sergeant Rick RAMJATTAN#2360 who advised that the victim had been transported to Sunnybrook Hospital and that Police Constable DYKE had gone with the victim in the ambulance. Police Constable MACKEY was also enroute to Sunnybrook Hospital

e.     I observed that crime scene tape was up to protect the crime scene and to prevent any unauthorized persons from entering the scene. I requested that the scene be expanded to include the entire parking area of 2159 Weston Road.

f.     Sergeant RAMJATTAN had already commenced canvassing and I requested that he detail officers to check for video in the area as well as canvassing all businesses and residential units in the area.  No video of the incident was recovered.

g.     I received information from Police Constable PAT MEEHAN #3265 that the victim had attended the Moonshine salon at 4 Church Street prior to being shot. I received further information that several witnesses were attending 31 Division for video statements.

h.     I observed a vehicle, a blue Mercedes Benz Convertible Ontario License Plate

9

#AXEV-178 parked facing southbound against the west wall of the Weston Drug Mart. I was advised that this was the victim's vehicle.

i.    I observed on this vehicle what appeared to be fresh scrapes to the rear passenger side wheel well as well as scrapes to the area behind the passenger door. I also noticed what appeared to be fresh damage to the passenger rear view mirror and signal indicator. It appeared that the vehicle had just been struck by another vehicle as there was fresh debris on the ground.

j.    I observed on the west wall of the Drug Mart what appeared to be two bullet holes

k.    I observed what appeared to be two shell casings near the rear of the victim's car, a pile of clothing and what I believed to be blood stained snow

l.    Numerous statements were taken from witnesses at the scene by officers, the witnesses described a black sports utility vehicle fleeing the scene with a lone male black driver

m.    At about 6:15 pm I left the scene to attend 31 Division in order to interview the witnesses who had been sent there.

n.    At about 6:42 pm Detective Constable HOPKINS and I took a video statement from the witness Linda TAIT. Linda TAIT stated she was in the area at the time of the shooting and heard several gunshots. Linda then advised that she observed a black Ford truck fleeing the scene with a male black driver wearing a toque

o.    At about 7:05 pm Detective Constable HOPKINS and I interviewed George SELKIRK who was in the area in his vehicle on Church Street at the time of the shooting. George SELKIRK while in the area heard what he believed "backfires" that sounded like a high powered revolver. Mr. SELKIRK then advised that shortly after he heard the "backfires" he observed a black sports utility vehicle northbound on Weston Road in the southbound lanes suddenly turn onto east bound Church Street and slid almost striking his vehicle. Mr. Selkirk advised that

10

he observed a lone male black driver.

p.   At about 7:25 pm Detective Constable HOPKINS and I interviewed Lynne
     MAITLAND who was in the area at the time of the shooting. Ms MAITLAND
     advised that while in the area she heard several gunshots and observed a black
     sports utility vehicle driven by a lone male black wearing a toque fleeing the
     scene.

q.   At about 9:46 pm Detective Constable HOPKINS and I interviewed George
     NELSON who is an employee of the Moonshine Salon. Mr. NELSON reported
     that the victim whom he knows at "FRANKIE" was in the barber shop prior to
     being shot, getting his hair cut. Mr. NELSON advised that after the victim left the
     barber shop he heard 5-6 gunshots and when he looked out the window, the victim
     was lying on the ground. Mr. NELSON then advised that he went over to the area
     where the victim was lying and took his phone as he was having seizures. Mr.
     NELSON reported he brought the victim's cell phone back to the shop and later in
     the evening turned it over to a police officer.

r.   At about 10:12 pm Detective Constable HOPKINS and I interviewed Dennis
     JOHNSON, the owner of the Moonshine Salon. Mr. JOHNSON reported that the
     victim whom he knows as "FRANKIE" came in to get a haircut. When the victim
     left, Mr. JOHNSON heard several gunshots and when he looked outside, the
     victim was lying on the ground speaking on his cellular phone.

15.   Detective Constable Todd CAREFOOT# 798 is a member of the Toronto Police Service
and currently carries out his duties as a member of Forensic Identification Services (F.I.S.).
Detective Constable CAREFOOT's duties include documenting, photographing, and gathering
evidence at crime scenes.

a.   On Thursday the 22nd of December 2005 at about 7:09 pm Detective Constable
     CAREFOOT attended the crime scene at Weston Road and Church Street at the
     location the victim Felix TWUM was shot. Detective Constable CAREFOOT

11

attended with another F.I.S officer Detective Constable HUBBARD #3999.

b.   Once on scene Detective Constable Carefoot was allowed access to the scene by Police Constable TAVARES who was in charge of protecting it.

c.   Detective Constable CAREFOOT upon his arrival conducted a general search of the area for evidence.

d.   Detective Constable CAREFOOT examined the victim's vehicle plate #AXEV178 (two door blue Mercedes Benz CLK convertible)

e.   While examining the vehicle Detective Constable CAREFOOT noted the following: a scrape around the wheel well on rear passenger side, large scrapes just to rear of passenger door, the passenger rearview mirror and signal light affixed to the mirror appeared pushed forward and broken

f.   Detective Constable CAREFOOT also noticed on the rear wall behind the victim's vehicle there appeared to be two bullet holes in the bricks of the Weston Road Drug Mart.

g.   Detective Constable CAREFOOT also noted broken glass in the parking lot near the front passenger side of the victim's vehicle as well as pieces of a broken mirror at the bottom of the windshield of the vehicle.

h.   Detective Constable CAREFOOT noted a 9mm empty casing on the pavement to the rear of the victim's car as well as another empty 9mm casing near the corner of the pharmacy where the victim's car was parked.

i.   Detective Constable CAREFOOT also observed what appeared to be a copper jacketed projectile on the pavement near the rear of the victim's car

j.   Detective Constable CAREFOOT observed a pile of the victim's clothing on the pavement near the drug store wall and bloodstains in the snow near the corner of the drugstore wall.

12

k.      Detective Constable CAREFOOT then noted another copper jacketed projectile on the snow between the drug mart and Church street, and another copper jacketed projectile just North of the drug stores wall

l.      Detective Constable CAREFOOT then noted finding copper jacketing on the pavement near the front passenger side of the victim's vehicle

m.      The casings, projectiles and jacketings recovered suggest that at least three shots were fired.

n.      Detective Constable CAREFOOT and his escort Detective Constable HUBBARD # 3999 processed the scene and gathered all evidence, which had been found.

16.    Detective Constable Simon HUBBARD #3999 is a member of the Toronto Police Service and currently carries out his duties as a member of Forensic Identification Services (F.I.S). Detective Constable HUBBARD's duties include documenting, photographing, and gathering evidence at crime scenes.

a.      On Thursday the 22nd of December 2005 at about 7:09 pm Detective Constable HUBBARD attended the crime scene at Weston Road and Church Street at the location the victim Felix TWUM was shot. Detective Constable HUBBARD attended with another F.I.S officer Detective Constable CAREFOOT #798)

b.      Detective Constable HUBBARD videotaped the crime scene and assisted Detective Constable CAREFOOT in processing evidence.

17.    Detective Larry REBELLATO #793 is a member of the Toronto Police Service and currently carries out his duties at 31 Division in the Criminal Investigative Bureau.

a.      On December 27th, 2005 Detective REBELLATO #793 in company with Detective Constable LUZCYK #8626 and Detective Constable WELLS #8327 attended Sunnybrook Hospital to interview the victim Felix TWUM in regards to the shooting.

13

b.   The victim reported that he assists people in buying used vehicles from Roy Foss Motors and receives referral fees and "a little extra" for arranging the car deals.

c.   The victim reported that he works for a friend at the dealership called Roy PARKER

d.   The victim reported that about two weeks prior to the shooting the person who shot him approached him and wanted to purchase a vehicle and register it in a female's name.  At the time of this interview, the victim could not recall the purchaser's name.

e.   The victim reported that the car deal was initially approved and the insurance for the vehicle was approved but there was a problem when it was discovered that the purchaser did not have a driver's licence.

f.   The victim reported that he was paid his $500.00 commission by the purchaser.

g.   The victim reported that when the purchaser attended the dealership to pick up the vehicle there was a problem plating the vehicle as the purchaser did not have a driver's licence.

h.   The purchaser then advised the accused that he wanted his $500.00 back as the deal had not been consummated. The victim refused to return the money and advised that he had done his part of the deal.

i.   The victim then advised the purchaser that he had 30 days to "get yourself into another car" so the insurance does not cancel and could be transferred to another car.

j.   The victim advised that he had obtained the purchaser's name and information.

k.   The victim then advised that the purchaser had produced his information including a driver's licence and this document was photocopied.

14

l.   The victim stated that the purchaser advised him that he was from Miami.

m.   The victim reported that about three days later, on the Monday prior to being shot
(Monday the 19th of December 2005), he was approached by the purchaser in a
plaza in the Yonge Street and Sheppard Avenue area. The purchaser grabbed him
by the shirt and while he had the victim by the shirt he had his other hand in his
back pocket like he was carrying something there. The purchaser at this time
asked where his money was. The victim then went to leave the parking lot in his
vehicle but the purchaser blocked it with his own vehicle. The victim then advised
that he exited his vehicle and punched the purchaser twice, breaking his nose. The
purchaser then again requested his money back.

n.   The victim then reported that the following day that he received a call from the
purchaser who advised that he went to see a doctor and his nose was broken as a
result of being struck by the victim. The purchaser then said that he was in the
wrong for confronting the victim.

o.   The victim then reported that on Thursday (December 22nd, 2005) he left the
barber shop at Church Street and Weston Road and observed the purchaser in a
vehicle. The victim observed the headlights on the vehicle come on and he pulled
out. The purchaser pulled up to the victim and rolled down his window, removed
a gun, looked left and right and said "Fuck You". The purchaser then started
shooting at him. The victim advised that the first shot struck him and he attempted
to run away and get into his vehicle.  The purchaser then turned around and shot
him again.

p.   The victim advised that the person who shot him was the same person who he had
dealt with previously in the purchase of the vehicle and who he had the
confrontation with at the plaza at Yonge Street and Sheppard Avenue.

q.   The victim described the suspect as a black male, 5'8", ugly with a big nose, slim
build, 110lbs, about 26yrs old or older, black hair.

15

r.   The victim reported that his injuries as a result of the shooting included the following:  the victim lost a kidney, has a damaged liver and damaged lungs and the victim is now a paraplegic.

s.   The victim advised he could eventually give the police the name the purchaser gave him at the time of the car transaction, but he could not provide the name at the time of the interview.

t.   The victim described the handgun used to shoot him as a "nine" (street slang describing a 9mm handgun) or a "forty" (street slang describing a .40 calibre handgun) handgun possibly a Glock (Glock is a brand of handgun.)

u.   The victim advised that the person who shot him had on previous meetings been operating a black SUV with Florida Plates from "Miami".

v.   The victim advised the person who shot him had previously contacted him on his cell phone number #647-219-6503

18.   Mr. Twum has a criminal record (14 Convictions) for various offences including Possession of Property Obtained by Crime, Fail to Attend Court, Fraud Under, Fraud Over, Assault with intent to resist arrest, Fail to Comply with Recognizance, Uttering a Forged Document, Obstruct Peace Officer, Possession of a Scheduled Substance, Possession of a Scheduled Substance for the Purpose of Trafficking and Fail to Comply with Undertaking. Mr Twum is also currently before the courts charged with Possession of Property obtained by Crime and Possession of Credit Card Obtained by Crime X3.

19.   Detective Constable Richard LUCZYK #8626 is a member of the Toronto Police Service and at the time of this investigation was working at 31 Division in the Criminal Investigative Bureau

a.   On December 27th 2005 Detective Constable LUCZYK attended the Esso gas station located at Yonge Street and Sheppard Avenue in the City of Toronto to receive surveillance video of the altercation between the suspect and victim days

16

prior to the shooting.

b.   Detective Constable LUCZYK spoke with the manager of the Esso gas station
     Evelyn BACCUS who advised Detective Constable LUCZYK to return later in
     the day to retrieve the surveillance video.

c.   At about 1:13 am Police Constable LUCZYK attended the gas station and
     retrieved the surveillance video. The video was assigned Toronto police property
     tag #N344681.

d.   This video was viewed, and the altercation was not observed as the cameras show
     only the gas pump and cashier areas of the station.

20.   Detective Constable Duncan MILLER #4216 is a member of the Toronto Police Service
and currently works at 31 Division in the Criminal Investigative Bureau

a.   On December 29th 2005 at about 1:34pm Detective REBELATTO and Detective
     Constable MILLER attended North York Chev Olds Dealership at 7200 Yonge
     Street in Richmond Hill for the purposes of interviewing Roy PARKER

b.   The North York Chev Olds Dealership is the location where there was an attempt
     to purchase a vehicle using false identification under the name of Oval
     THOMPSON. The victim worked as a car broker at this location.

c.   Mr. PARKER advised he was employed by North York Chev Olds as a sales
     person for special financing dealing with customers with high risk credit ratings

d.   Mr. PARKER advised that he knew the victim as a broker who would bring
     customers to him and receive a referral fee.

e.   Mr. PARKER advised that the victim had brought in several clients including a
     male known as Oval THOMPSON sometime around December of 2005. Mr.
     PARKER advised he had met with "Oval THOMPSON" on several occasions in
     relation to the purchase of a Honda from the car lot.

17

f.      Mr. PARKER turned over paperwork to Detective REBELATTO in relation to the attempted car purchase by Oval THOMPSON.

g.      The paperwork handed over was for the purchase of a "99" Green Honda by a person identifying himself as:

    i)      THOMPSON, Oval, R

    ii)     Driver's License #T5837-62567-41217 (issued according to photocopy 2001/05/07)

    iii)    27 Marsh Lane, Ajax

    iv)     L1T-3W2

    v)      Phone #647-404-7781

h.      The paperwork included a photo copy of a counterfeit driver's license produced by the person claiming to be Oval THOMPSON (copy attached as Exhibit "D")

i.      Mr. PARKER advised that the driver's license produced under the name Oval THOMPSON was not registered with the Ministry of Transportation.

j.      Included in the package was a photocopy of proof of insurance produced by the purchaser for the vehicle he intended to purchase. Mr. PARKER advised that the proof of insurance was not faxed from the insurance company but from an unknown source. The proof of insurance was as listed below:

    i)      Insurance Company- Security National

    ii)     Policy Holder- Oval THOMSON

    iii)    Policy #75526079

    iv)     Valid From: Dec 9th, 2005

18

  v)  Expires; Dec 27th, 2005

  vi)  Vehicle: 1999 Honda Civic Se

  vii)  Vehicle Identification Number# 2HGEJ6515XH917529

k. Also included in the package was a blank cheque provided by the purchaser as was required of him in the process of purchasing the vehicle.

  i)  Bank- Canada Trust

  ii)  Branch- 4111 Kingston Road, Scarborough

  iii)  Cheque #1)-  Account #0010544200483966313949

l. Mr. PARKER advised that the purchaser did not have any cheques and he had referred him to a friend "FRANK" that works at the above mentioned Canada Trust to open an account. The above mentioned cheque was seized and submitted for forensic examination, but no relevant information was obtained.

m. Another document in the package was a pay stub from the Moonshine Barber Shop in the name of Oval THOMPSON, as proof of employment. This document is needed to assist in the process of obtaining credit to purchase the vehicle.

n. A photo copy of a social insurance number in the name of Oval THOMPSON was supplied to Mr. PARKER by the purchaser. The number on the Social Insurance Card was #504-851-319

o. A check was run through Equifax of the purchaser in regards to the loan he was attempting to obtain to finance the vehicle. Equifax is a company which will check the credit history of loan applicants prior to the lenders approving the loan. The Equifax check revealed the driver's license and social insurance card provided by the purchaser were invalid.

p. Mr. PARKER advised that because of the discrepancies with the purchaser's

19

identification the car deal fell through

q.   Mr. PARKER further advised that after the deal had fallen through he received
     several calls from the purchaser who was trying to locate Felix TWUM.

r.   Mr. Parker advised that he would recognize the purchaser if he observed him
     again and described him as the following:

          i)   · Black Male, 5'8"-9", 150 pounds, skinny build, medium complexion,
               shaved head, Jamaican

21.   On December 29th, 2005 Detective REBELLATO #793 and Detective Constable
MILLER interviewed Justin FLEMING

a.   Justin FLEMING is an employee of the car dealership and works as an
     administrative assistant. Mr. FLEMING handles cases in which persons wishing
     to purchase vehicles are of a high financial risk. Mr. FLEMING conducts financial
     background checks on prospective buyers.

b.   Mr. FLEMING knows the victim as a car broker and dealt with "Oval
     THOMPSON" on several occasions around December 2005, while he was
     attempting to purchase a Honda Motor vehicle.

c.   Mr. FLEMING showed Detective REBELATTO documents that were prepared at
     the time of the proposed Honda purchase.

d.   Mr. FLEMING advised that a male identifying himself with an Ontario driver's
     licence and social insurance card as Oval THOMPSON had applied for credit
     through the dealership and was attempting to purchase a 1999 Honda motor
     vehicle from the dealership. Mr. FLEMING obtained a photocopy of the
     purchaser's driver's license and social insurance card.

e.   Prior to the deal being completed Mr. FLEMING reports that the purchaser pulled
     him aside and advised him that his driver's license was "void" and "did not exist".

20

The purchaser advised he was giving him a "heads up" that when they attempted to obtain licence plates for the Honda the dealership may be unable to.

f.      Mr. FLEMING advised that the photograph on the driver's license produced by the purchaser was a true image of him.

g.      Mr. FLEMING advised that the deal was set to go through and the dealership was about to obtain licence plates for the vehicle, but with the recently discovered information from the purchaser the deal fell through.

h.      Mr. FLEMING describes the purchaser as the following:

   i)    Black Male, 5'5 to 5'6", 30-35 years old, 150lbs, skinny build, unshaven, makes what appears to be an involuntary noise with his throat.

   ii)   MR. FLEMING advised that he believes the photo on the driver's license as provided to him by the purchaser is an actual photo of that person.

22.    I ran checks through the police database as well as the Ministry of Transportation on the name of Oval THOMPSON and my results were that there were no records found on any database for that name.

23.    Detective Constable Ryan FORDE #86872 is a member of the Toronto Police Service and currently is attached to the Urban Organized Crime Squad.

a.      On Friday the 10th of February 2006 I received a call from Detective Constable FORDE who advised me that he had information on the shooting of the victim.

b.      Detective Constable FORDE advised that he had received information from a Confidential Informant that the person responsible for the shooting of the victim was a male by the name of Anthony Augustus REYNOLDS with a date of birth of 1977/09/22. The Informant advised that the suspect was associated to an address of 2085 Wilson St, Inisfil Ontario. The Informant advised that the suspect does not reside at this address.

21

   c.      The informant advised that the victim worked at a car dealership in the Yonge Street and Steeles Ave area.

   d.      The Informant stated that the victim provided REYNOLDS with false insurance for a vehicle he was going to purchase. The informant stated that the victim provides false insurance which is good for six months to persons who wished to purchase vehicles.

   e.      The Informant reported that the victim was shot by REYNOLDS over a dispute in regards to the transaction of the vehicle and insurance.

   f.      The Informant also stated that REYNOLDS operated a black Chevrolet Tahoe with unknown license plates.

   g.      Detective Constable FORDE advised that he had placed Anthony REYNOLDS on CPIC for observation

24.     I conducted checks on the police data base, the Ministry of Transportation data base and Immigration Canada Data Base on Anthony REYNOLDS and I received the following information:

   a.      REYNOLDS does not have a criminal record in Canada.

   b.      REYNOLDS was not facing any criminal charges in Canada

   c.      REYNOLDS had contact with Toronto Police on 2000/04/20 in which he reported an Assault and Theft Under (Toronto Police Occurrence #2000/0063683). I was the officer who took the report in 2000. In the aforementioned report he provided to police an address of 1084 Kensington St, Stroud, Ontario.

   d.      REYNOLDS held an Ontario driver's license:

       i)       REYNOLDS, Anthony, A

       ii)     Date of Birth-1977/09/22

22

    iii)    Driver's License #R2988-05317-70922

    iv)    Address: 2085 Wilson St, Inisfil, Ontario

e.    REYNOLDS is a Canadian Citizen who originally came to Canada from Jamaica on August 17th, 1996.

f.    REYNOLDS' sponsor in Canada was Paulette LEONARD-RICHARDS

25.    On Thursday the 23rd of February 2006, I received a driver's licence photograph of the accused Anthony REYNOLDS (Ontario Driver's License #R2988-05317-70922) from the Ministry of Transportation (see Exhibit "E").

a.    I examined the photograph from the Ministry of Transportation and compared it with the photograph of Oval THOMPSON in the photocopied loan application provided to Detective REBALATTO by Roy PARKER and Justin FLEMING (see Exhibit "D")

b.    I observed that both photographs appeared to be exactly the same

c.    I brought REYNOLDS' driver's licence photograph to the Toronto Police Forensic Identification Service for the purpose of preparing a photo line-up which included a photograph of Anthony REYNOLDS.

d.    The purpose of this photo line-up was to have the victim and witnesses view a group of photographs of similar looking persons. The series of photographs would include the Ministry of Transportation driver's license photograph of Anthony REYNOLDS

26.    Ms Joe ORSATTI #88178 is a civilian member of the Toronto Police Service and is currently attached to Forensic Identification Services: Computer Assisted Recovery Enhancement System section.

a.    Ms Joe ORSATTI is a Forensic Artist and is able to insert a Ministry of

Transportation driver's license photograph into a Toronto Police photo line-up

b.      Toronto Police line-up #06-001014 is a series of 11 booking photographs of persons who have been arrested by the Toronto Police Service. These persons are similar looking to Anthony REYNOLDS.

c.      Ms Joe ORSATTI inserted the driver's license photograph of Anthony REYNOLDS into Toronto Police line-up #06-001014

d.      After Ms Joe ORSATTI inserted the driver's license photograph of Anthony REYNOLDS into Toronto Police Line-Up #06-001014 it brought the total amount of photographs to 12.

e.      The photographs in line-up #06-001014 were arranged into twelve pictures on one page, three lines consisting of four pictures per line.

f.      Each photograph was sequentially numbered from #1-#12.

g.      The numbers identifying each photograph were placed above the image.

h.      Several copies of the photo line-up were generated with the photographs shuffled.

27.     On Monday the 27th of March 2006, Detective CARBONE and I attended the Lyndhurst Rehabilitation Center in Toronto for the purposes of showing a photo line-up, which included a picture of the accused Anthony REYNOLDS to the victim Felix TWUM (see Exhibit "F").

a.      The Toronto Police photo line-up was numbered 06-001014, the line-up consisted of 12 numbered photographs.

b.      REYNOLDS was in position #3 on the line-up

c.      At about 12:33pm Detective CARBONE showed the photo line-up to Felix TWUM

d.      The victim Felix TWUM picked out REYNOLDS' photograph in position #3 and

stated "that's the person that shot me, number three"

28.     Police Constable WAUCHOPE #8056 and Police Constable TUCKER #8198 are members of the Toronto Police Service and at the time of this occurrence were members of 31 Division Criminal Investigative Bureau.

    a.     On Wednesday the 29th of March 2006 Police Constable WAUCHOPE and Police Constable TUCKER attended North York Chev Olds at 7200 Yonge Street for the purposes of showing Toronto Police photo line-up #06-001014 to Roy PARKER and Justin FLEMING, the employees of Roy Foss Motors to see if they could identify the person ("THOMPSON") who had attempted to purchase the Honda with Felix TWUM as the "broker". PARKER and FLEMING were shown different versions of the lineup, out of one another's presence.

    b.     At about 11:45 am photo line-up #06-001014 was shown to Roy PARKER

    c.     The photo line-up consisted of 12 numbered photographs, REYNOLDS' photograph was in position #8 of this line-up.

    d.     The witness Roy PARKER stated "I cant make a positive one, he wasn't around that much, he only came around two to three times, if I had to guess I would say number twelve, but I'm not sure. I don't want to send this guy to jail for nothing, sorry man"

    e.     Police Constable WAUCHOPE advised me that while making this statement the witness was actually pointing at the REYNOLDS' picture, which was #8. The accused photo in the #8 position was directly above the photo in the #12 position. The numeral #12 is directly below REYNOLDS' photograph. The witness mistakenly believed the photograph he picked was labeled #12. The witness when asked to sign the photo of the person he had picked out of the line-up signed REYNOLDS' photo in position #8.

    f.     At about 11:56 am the witness Justin FLEMING was shown photo line-up

25

#06-001014. REYNOLDS' photograph in this line up was in position #9.

g.   The witness Justin FLEMING pointed to REYNOLDS' photograph and stated "number nine, the guy was a client once, tried to purchase a vehicle through this office, that is Thompson #9"

29.   On Thursday the 4th of May 2006 Detective Constable HOPKINS received information from Customs Officer McDANIAL of the United States Customs Service

a.   Officer McDANIAL is a United States Custom Officer and is in the Passenger Analytical Unit working out of Pearson International Airport.

b.   All passengers traveling to the United States from Pearson International Airport must pass through United States Customs which has a branch at Pearson International Airport.

c.   The U.S. Custom Service maintains a data base of persons traveling through border points in relation to the United States

d.   Officer McDANIAL advised that the accused Anthony REYNOLDS departed from West Palm Beach, Florida, United States of America on November 25th, 2005 and arrived in Toronto, Canada on the same day

e.   Officer McDANIAL advised that Anthony REYNOLDS was to return to West Palm Beach, Florida on December 5th, 2005, but rescheduled his airline ticket to a return date of December 23, 2005.

f.   Officer McDANIAL advised that on December 23rd, 2005 at 9:38 am, (the day after the shooting)  Anthony REYNOLDS departed from Pearson International Airport on Air Canada flight number 936 bound for West Palm Beach, Florida

30.   On Thursday the 4th of May 2006 I attended the Toronto North Courts at 1000 Finch Ave West in the City of Toronto.

26

a. I was seen by Justice of the Peace WAISBERG.

b. I applied to obtain a Warrant in the First Instance for Anthony REYNOLDS arrest on the following charges:

    i)     Attempted Murder *Criminal Code* 239

    ii)     Attempted Murder While Using a Firearm *Criminal Code*, section, section 239(a)

    iii)     Aggravated Assault *Criminal Code*, section 268

    iv)     Discharge Firearm Endanger Life *Criminal Code*, section 244(b)

    v)     Assault With a Weapon *Criminal Code*, section 267(a)

    vi)     Possession of an Unregistered Restricted Weapon *Criminal Code*, section 91(1)

    vii)     Pointing a Firearm *Criminal Code*, section 87

    viii)     Unauthorized Presence of a Firearm in a Motor Vehicle *Criminal Code*, section 94(1)

    ix)     Attempt Fraud Over *Criminal Code*, section 380

c. The warrant was granted by Justice of the Peace WAISBERG and Anthony REYNOLDS is currently wanted on the above mentioned charges. This Warrant is Canada Wide.

31. On Thursday January 4th 2007 I spoke on the phone with a representative of Air Canada. Janine KHALE is an employee of Air Canada and currently works in the security department. I received the following information from her:

a. Air Canada flight records are held in the Air Canada Reservation System. This system is a computerized system in which Air Canada uses to record and store

customer and flight information. The data of this system can be accessed through the Air Canada officers located at 7373 Cote Vertu West, Ville St Laurent, Montreal Quebec.

b.   A record is generated in the Air Canada Reservation System when a customer purchases a flight.

c.   The Air Canada Reservation System records information such as flight manifests, reservation files, confirmation of flight, customer address's and phone number as well as the method of payment made by the customer.

32.   On Monday the 15th of January 2007, I attended the Toronto North Courts and obtained a *Criminal Code* Search Warrant for the phone number of #647-404-7781, which "Oval Thompson" had provided as part of the vehicle transaction. I also obtained a *Criminal Code* Production Order for flight records pertaining to flights the accused had been a passenger on during the time period surrounding the offence. The warrants were endorsed by Judge L. MARSHALL a Provincial Court Judge for the Province of Ontario, Canada.

33.   On Wednesday the 21st of February 2007 I received the results of the search warrant executed on Rogers Wireless Inc. for the phone records for number of #647-404-7781.

a.   The subscriber information for this phone showed it had been obtained using the name of Robinson UCHENDU with an address of 3150 Erin Centre Blvd, Unit#92, Mississauga, Ontario, Canada

b.   I examined the records and observed two calls placed from this phone on December 13th 2005. The first call was placed at 1:33pm to #561-694-7776 and the second call was placed at 11:06pm to #561-632-7148.

c.   I checked these numbers on the internet using the website canada411.com. I received information that the #561 prefix or area code in these numbers identifies the phones as being based in Florida.

28

d.  I also observed in the phone records that this phone had been used to phone the victim's cellular phone (#647-219-6503) seven times on December 14th, 2005

34.  Detective Constable Joel MANHERZ is a member of the 31 Division T.A.G. (Target Apprehension Group). The 31 T.A.G. group is responsible for maintaining and enforcing outstanding 31 Division warrants.

a.  On Wednesday the 21st of February 2007, Detective Constable MANHERZ made a request to South Simcoe Police to attend two addresses associated to the accused in an attempt to apprehend and or determine where the accused was presently located.

b.  The addresses Detective Constable MANHERZ requested South Simcoe Police attend were 1084 Kensington Street and 2085 Wilson Street. Both of these addresses are located in Innisfil, Ontario.

35.  Police Constable Warren HARRIS #113 and Police Constable Morgan RUSSELL #133 are both members of the South Simcoe Police Service. The South Simcoe Police Service is responsible for policing an area in Ontario north of Toronto, which includes the City of Innisfil.

a.  On Wednesday the 21st of February, 2007 at about 7:00pm in response to Detective Constable MANHERZ's request Police Constable HARRIS and Police Constable RUSSELL attended 1084 Kensington Ave in Innisfil in attempt to locate the accused.

b.  Once on scene at 1084 Kensington Ave, Police Constable HARRIS and Police Constable RUSSELL, spoke to an occupant of the dwelling identified as Jeff RICHARDS.

c.  Initially Jeff RICHARDS denied knowing the accused; however, while police were speaking with him his mother Paulette RICHARDS called on the phone.

d.  Police Constable HARRIS spoke with a female on the telephone who identified

herself as Paulette RICHARDS the accused's mother. Paulette RICHARDS advised Police Constable HARRIS that her son Anthony REYNOLDS (the accused) was married and living in Tampa, Florida.

e.  Paulette further advised she did not know the accused's address, phone number, workplace or wife's name. Paulette also advised that the accused has not resided at 1084 Kensington Ave. for 11 years.

f.  At this time Jeff RICHARDS advised police that the last time the accused was at the address was around Christmas time 2005.

g.  At about 8:18 pm Police Constable HARRIS and Police Constable RUSSELL attended 2085 Wilson Ave, Inisfill.

h.  At 2085 Wilson Ave Police Constable HARRIS and Police Constable RUSSELL spoke with the occupant who identified himself as Delmore RICHARDS, the accused's uncle.

i.  Delmore RICHARDS advised police that the accused had never resided at this address and had last seen him in early 2006 when he (the accused) had driven up from Florida in a rental Chrysler 3000, and stayed with them for two or three days.

j.  Delmore RICHARDS advised that he had not spoken to the accused for some time but believed he was living in Miami, Florida with his wife and baby, and working as a truck driver.

k.  Delmore RICHARDSadvised officers that he did not have the accused's phone number on hand but would check his records for it.

l.  At about 8:45 pm officers exited the dwelling of 2085 Wilson Ave.

m.  At about 10:02 pm Police Constable HARRIS received a phone call from Delmore RICHARDS who advised he had located a phone number for the accused. Delmore RICHARDS advised the accused's phone number was

30

#561-329-5535.

n.   Police Constable HARRIS conducted an internet check on the number through the website 411.com. Police Constable HARRIS received information this number was a cellular phone number based in the Palm Beach area of Florida. The carrier information was found to be Bell South Mobility.

36.   On February 22nd 2007 in receipt of the information obtained from the South Simcoe Police Service Detective Constable MANHERZ contacted Detective Sergeant Dan BOWERS. Detective Sergeant Dan BOWERS is the Officer in Charge of the International Fugitive Section of the Canadian Branch of Interpol. This unit is based in Ottawa, Ontario, Canada. Detective Constable MANHERZ requested assistance from the unit in locating the accused.

a.   Detective Constable MANHERZ received information from Detective Sergeant Dan BOWERS (via the U.S. Marshall service and U.S. Immigration) that the Accused is a naturalized American citizen, and has a Florida State commercial driver's licence #R-543-001-77-342-0 which lists a Lakeworth, Florida address.

b.   Detective Constable MANHERZ also received information that the accused has two vehicles registered to him. The first vehicle is a 2003 Acura Florida licence plate#U691YA, and the second vehicle is a 1994 Acura Florida Licence plate #F12OHT.

c.   Detective Constable MANHERZ received a Florida driver's licence photograph (Exhibit "G") of the accused and compared it with his Ontario driver's licence photograph. Detective Constable MANHERZ observed that both photographs were of the same person.

37.   On Monday the 12th of March 2007, as a result of the Production Order executed on Air Canada, I received documents from the Air Canada Reservation System. I examined these documents and discovered the following:

a.   The accused booked a return flight via the internet with Air Canada from Palm

Beach International Airport (PBI) to Lester B. Pearson International Airport in Toronto Canada (YYZ).

b.  The accused booked the flight using his real name of Anthony REYNOLDS with an address of 528 South E Street, Lakeworth, Florida.

c.  The accused provided Air Canada with contact information including a phone #561-214-4691, a Visa Card#4319040008487021X0708, and two e-mail addresses PRENNIEKAT@YAHOO.com and BABYBOY_559@HOTMAIL.com

d.  The accused's initial travel itinerary was Air Canada Flight #937 from Palm Beach International Airport departing on the 25th of November 2005, to Lester B. Pearson International Airport. The accused was booked to return on Air Canada Flight #936 departing from Lester B. Pearson International Airport on the 5th of December to Palm Beach International Airport.

e.  The Air Canada Reservation documents showed that the accused changed his return flight date to Palm Beach, Florida originally scheduled for the 5th of December 2005 to December 23rd 2005.

f.  The new flight was Air Canada Flight #936 departing from Lester B. Pearson Airport to Palm Beach International Airport in Florida on December 23rd, 2005.

g.  I examined the flight manifest and confirmed that the accused boarded Air Canada flight #936 from Lester B. Pearson Airport to Palm Beach International Airport on December 23rd, 2005. The accused was assigned seat #24C.

h.  I conducted a check on the phone number provided to Air Canada by the accused using internet website yellowpages.com. The phone #561-214-4691 was listed as registered to a Verizon Wireless cellular phone. The subscriber to this phone is listed as Randy Yacuzzo with an address of 1598 Newhaven Point Line, Royal Palm Beach, Florida 33411.

32

38.     On Sunday the 9th of December 2007, I received a phone call from Officer Danial Mattina of the Department of Homeland Security. Officer Mattina works in the Fort Lauderdale Airport and advised me of the following:

      a.     Officer Mattina advised that Anthony Reynolds returned to Fort Lauderdale Airport on a flight from Kingston, Jamaica.

      b.     Officer Mattina advised that he was detaining Anthony Reynolds at the Airport, on information in regards to charges he was facing in Canada.

      c.     I advised Officer Mattina that I was obtaining an extradition warrant for Anthony Reynolds return to Canada but it was not yet in effect.

      d.     I sent a photograph of Anthony Reynolds to Officer Mattina who confirmed it was the same person who he was detaining.

      e.     I advised Officer Mattina that Anthony Reynolds could be released pending the issuance of the extradition order.

      f.     Officer Mattina advised he would be releasing the accused.

39.     In March 2008, I received information from INTERPOL reconfirming REYNOLDS' Florida address.

## D.     ANTHONY REYNOLDS' WHEREABOUTS

40.     As set out above

      a.     I believe that after shooting the victim, the accused on December 23rd, 2005, at 9:38 am fled the country on Air Canada Flight #936 bound for West Palm Beach, Florida, United States of America. This information has been confirmed by the flight records and manifest obtained under the authority of a *Criminal Code of Canada* Production Order.

      b.     I believe that the accused is currently residing in Florida, both from statements

33

made by the accused's family and the fact the accused is a naturalized American
Citizen. The accused also has a Florida State driver's licence and two vehicles
registered to him with Florida licence plates attached.

41.     That I make this Affidavit in support of Canada's request for extradition of Anthony
REYNOLDS and for no improper purpose or motive.


SWORN BEFORE ME at the         )
City of Toronto, in the Province of  )
Ontario, Canada, this __16th__ day  )
of ___June___, 2008 )         DARREN TOWNLEY


_____
A Commissioner for taking oaths etc.
Janet Gallin
Counsel, Crown Law Office - Criminal

# EXHIBIT "A"

# Certified Copy of Information

THIS IS EXHIBIT ___A___ TO THE
AFFIDAVIT OF Darren Townley
SWORN BEFORE ME
THIS 16th DAY OF June 2008
_____ A Commissioner, etc.

ANADA
OF ONTARIO
E DE L'ONTARIO

RONTO REGION
GION DE TORONTO

Information of ........ Darren TOWNLEY
Dénonciation de:

of/de  Toronto Police Service

Peace Officer                                                    The informant says
                                                                 Le dénonciateur
(occupation/profession)

that he/she believes on reasonable grounds that
déclare qu'il a des motifs raisonnables de croire que

Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City
of Toronto, in the Toronto Region did attempt to murder Felix TWUM by shooting him
contrary to the Criminal Code

(2)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region did attempt to murder Felix
TWUM while using a firearm by shooting him
contrary to the Criminal Code

(3)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region did maim Felix TWUM thereby
committing an aggravated assault contrary to the Criminal Code

(4)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region with intent to endanger the
life of Felix TWUM discharge a firearm at Felix TWUM
contrary to the Criminal Code

(5)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region did in committing an assault on
Felix TWUM carry a  weapon  to wit a firearm. contrary to the Criminal Code

(6)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region did have in his possession a
restricted weapon, to wit a 9 millimeter handgun for which he did not have a
registration certificate issued to him contrary to the Criminal Code

(7)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region did without lawful excuse point
a firearm to wit a handgun at Felix TWUM contrary to the Criminal Code

(8)  and further that Anthony REYNOLDS on or about the 22nd day of December in the year
2005 in the City of Toronto, in the Toronto Region was an occupant of a motor
vehicle, to wit a black sports utility vehicle in which he knew that there was at
that time a restricted weapon, to wit a 9 millimeter handgun
CONTRARY TO THE CRIMINAL CODE.

(9)  and further that Anthony REYNOLDS on or about the 7th day of December in the year
2005 in the City of Toronto, in the Toronto Region did by deceit, falsehood or
other fraudulent means attempt to defraud The Toronto Dominion Bank of thirteen
thousand three hundred and twenty four dollars and fifty seven cents of a value
which exceeded five thousand dollars contrary to the Criminal Code.

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIEE
ET CONFORME A L'ORIGINAL

APR 2 3 2007

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

OFFICE FOR DISABILITY ISSUES          OFFICE DES AFFAIRES DES PERSONNES HANDICAPÉES
INFORMATION SERVICES FOR BARRIER FREE COURTS    SERVICE D'INFORMATION SUR LES TRIBUNAUX À ACCÈS FACILE
                    1-800-387-4456                  1-800-387-4456
            TORONTO AREA 326-0111           RÉGION DE TORONTO  326-0111

0935 (rev. 06·93)  (Long Form - One or More Accsd.
                   Formule complète - Un ou plusieurs prévenus)

(Continued on page No. 2 within)
(Suite à la page 2 ci-incluse)

me at the City of Toronto, in the Toronto Region  
devant moi dans la ville de Toronto, dans la région de Toronto

4 day of
jour de  May
YYYY
2006

es of the Peace in and for the Province of Ontario/Juge de paix dans et pour la province de l'Ontario

Informant/Dénonciateur Deb 1247L

| Appearance Notice/ Citation à comparaître | Promise to Appear/ Promesse de comparaître | Recognizance for Engagement pour le ................... YYYY | Confirmed on Confirmé(e) le ................... YYYY J.P. |

| | Crown Elects to Proceed / Choix de la Couronne | Summarily / Procédure sommaire | By Indictment / Mise en accusation | | Summary Conviction Offence(s) / Infraction punissable sur déclaration de culpabilité par procédure |

| Date / Date | Accused / Accusé(e) | Elects Trial by/Choix d'un procès devant | | | Abs. Juris. Jurid. abs. | Pleads/Plaidoyer | |
| | | Gen.Division /générale | Provincial Division/provinciale | | | | |
| | | Judge Juge | Judge & Jury/Juge et jury | Judge on Counts Juge pour les chefs d'accusation | | Guilty to Counts/ coupable pour les chefs d'accusation | Not Guilty to Counts/ non coupable pour les chefs d'accusation |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | Committed (or) Ord. Std. Trial *On Counts/ renvoyé à son procès (ou) astreint en jugement* pour les chefs d'accusation | Bail Cautionnement | Discharged on Counts libéré(e) pour les chefs d'accusation | Found Guilty on Counts reconnu(e) coupable pour les chefs d'accusation | Not Guilty on Counts Non coupable pour les chefs d'accusation |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

* With consent of accused and prosecutor, without taking or recording  
Avec le consentement de l'accusé(e) et du poursuivant sans recueillir ou consigner

(a) any evidence(or)  
(a) de preuve (ou)

(b) further evidence  
(b) de preuve supplémentaire

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL COPIE AUTHENTIQUE CERTIFIEE ET CONFORME A L'ORIGINAL

APR 2 3 2007

CLERK OF THE COURT ONTARIO COURT OF JUSTICE GREFFIER DE LA COUR COUR DE JUSTICE DE L'ONTARIO

Judge/Juge

x A                                                          **Page  1 of  1**

cused Name and Address                                       DOB      SEX
YNOLDS,  ANTHONY                                             1977.09.22  M

Officer

=======================================================================
Count Charge                                                Offence Date
=======================================================================
1   Attempted murder C.C. 239                               2005.12.22
2   Attempted murder while using a firearm C.C. 239(a)      2005.12.22
3   Aggravated assault C.C. 268                             2005.12.22
4   Discharge firearm endanger life C.C. 244(b)             2005.12.22
5   Assault with weapon C.C. 267(a)                         2005.12.22
6   Possession of unregistered restricted weapon C.C. 91(1) 2005.12.22
7   Pointing a Firearm C.C. 86(1)                           2005.12.22
8   Unauthorized presence of a firearm in a motor vehicle (1999) C.C.  2005.12.22
    Section 94(1)
9   Attempt Fraud Over C.C. 380(1)(a)                       2005.12.07

Total of 9 charges for accused REYNOLDS, ANTHONY

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIEE
ET CONFORME A L'ORIGINAL

APR 2 3 2007

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

# APPENDIX "A"

1) Attempted Murder C.C 239
2) Attempted Murder While using a   Firearm  C.C 239(a)
3) Aggravated Assault C.C 268
4) Discharge Firearm Endanger Life C.C 244(b)
5) Assault With a Weapon C.C 267(a)
6) Possession of an Unregistered Restricted Weapon C.C  91(1)
7) Pointing a Firearm C.C 86(1)
8) Unauthorized Presence of a Firearm in a Motor Vehicle C.C 94(1)
9) Attempt Fraud Over C.C 380(1)(a)

# EXHIBIT "B"

# Warrant in the First Instance

THIS IS EXHIBIT ____B____ TO THE
AFFIDAVIT OF _Durren Town key_
SWORN BEFORE ME
THIS _16th_ DAY OF _June_ 20_08_

_____ A Commissioner, etc.

**Warrant for Arrest**

Form 7
Sections 475, 493, 597, 800, 803

CANADA
PROVINCE OF ONTARIO }
TORONTO REGION

To the Peace Officers in the said Region
and in the Province of Ontario:

This warrant is issued for the arrest of __Anthony REYNOLDS__          __1977/09/22__
_(Name)_                                    _(Date of Birth - YYYY/MM/DD)_

of __No fixed address__
_(Address)_

of the __City of Toronto__          hereinafter called the accused.
_(City)_

WHEREAS the accused has been charged that he/she, on December 22nd, 2006

at the City of Toronto, in the said Region, _(Set out briefly the offence in respect of which the accused is charged)._

see appendix "A"

contrary to the Criminal Code.

AND WHEREAS

_Informant's Initials_

(a) there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4), 512(1));

(b) the accused failed to attend court in accordance with the summons served upon him/her (512(2));

(c) (an appearance notice or a promise to appear or a recognizance entered into before an officer in charge) was confirmed and the accused failed to attend court in accordance therewith (512(2));

(d) it appears that a summons cannot be served because the accused is evading service (512(2));

(e) the accused was ordered to be present at the hearing of an application for a review of an order made by a justice and did not attend the hearing (520(5), 521(5));

(f) there are reasonable grounds to believe that the accused has contravened or is about to contravene the (promise to appear or undertaking or recognizance) on which he/she was released (524(1), 525(5), 679(6));

(g) there are reasonable grounds to believe that the accused has since his/her release from custody on (a promise to appear or an undertaking or a recognizance) committed an indictable offence (524(1), 525(5), 679(6));

(h) the accused was required by an (appearance notice or a promise to appear or a recognizance entered into before an officer in charge or a summons) to attend at a time and place stated therein for the purposes of the _Identification of Criminals Act_ and did not appear at that time and place (502, 510);

(i) an indictment has been found against the accused and the accused has not appeared or remained in attendance before the court for his/her trial (597);

(j) for any case not covered above, insert recital in the words of the statute authorizing the warrant:

This is, therefore, to command you, in Her Majesty's name, forthwith to arrest the said accused and to bring him/her before the Presiding Judge of the Ontario Court of Justice of the Toronto Region or before me or any justice in and for the said Region, to be dealt with according to law.

Dated this __4th__ day of __MAY__          __2006__

at the City of Toronto, in the Toronto Region.

_Judge, Clerk of the Court, Provincial Court Judge or Justice_

STEPHEN WALSBERG
JUSTICE OF THE PEACE

TPS Form 7 (Adult)   (2002/11)

CANADA
PROVINCE OF ONTARIO

TORONTO REGION

**Warrant for Arrest**
Sections 475, 493, 597, 800, 803

To the Peace Officers in the said Region
and in the Province of Ontario:

This warrant is issued for the arrest of __Anthony REYNOLDS__     __1977/09/22__
                                          *(Name)*              *(Date of Birth - YYYY/MM/DD)*

of __No fixed address__
              *(Address)*

of the __City of Toronto_____ hereinafter called the accused.
              *(City)*

WHEREAS the accused has been charged that he/she,  on December 22nd, 2006

at the City of Toronto, in the said Region, *(Set out briefly the offence in respect of which the accused is charged)*

  see appendix "A"

contrary to the Criminal Code.

AND WHEREAS

*Informant's initials*

(a) there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4), 512(1));

_____ (b) the accused failed to attend court in accordance with the summons served upon him/her (512(2));

_____ (c) (an appearance notice or a promise to appear or a recognizance entered into before an officer in charge) was confirmed and the accused failed to attend court in accordance therewith (512(2));

_____ (d) it appears that a summons cannot be served because the accused is evading service (512(2));

_____ (e) the accused was ordered to be present at the hearing of an application for a review of an order made by a justice and did not attend the hearing (520(5), 521(5));

_____ (f) there are reasonable grounds to believe that the accused has contravened or is about to contravene the (promise to appear or undertaking or recognizance) on which he/she was released (524(1), 525(5), 679(6));

_____ (g) there are reasonable grounds to believe that the accused has since his/her release from custody on (a promise to appear or an undertaking or a recognizance) committed an indictable offence (524(1), 525(5), 679(6));

_____ (h) the accused was required by an (appearance notice or a promise to appear or a recognizance entered into before an officer in charge or a summons) to attend at a time and place stated therein for the purposes of the *Identification of Criminals Act* and did not appear at that time and place (502, 510);

_____ (i) an indictment has been found against the accused and the accused has not appeared or remained in attendance before the court for his/her trial (597);

_____ (j) for any case not covered above, insert recital in the words of the statute authorizing the warrant:

This is, therefore, to command you, in Her Majesty's name, forthwith to arrest the said accused and to bring him/her before the Presiding Judge of the Ontario Court of Justice of the Toronto Region or before me or any justice in and for the said Region, to be dealt with according to law.

Dated this __4th__ day of __MAY__ , __2006__

at the City of Toronto, in the Toronto Region.

_____
Judge, Clerk of the Court, Provincial Court Judge or Justice

STEPHEN WAISBERG
JUSTICE OF THE PEACE

Form 7 (Adult)  (2002/11)

# APPENDIX "A"

1) Attempted Murder C.C 239
2) Attempted Murder While using a   Firearm  C.C 239(a)
3) Aggravated Assault C.C 268
4) Discharge Firearm Endanger Life C.C 244(b)
5) Assault With a Weapon C.C 267(a)
6) Possession of an Unregistered Restricted Weapon C.C  91(1)
7) Pointing a Firearm C.C 86(1)
8) Unauthorized Presence of a Firearm in a Motor Vehicle C.C 94(1)
9) Attempt Fraud Over C.C 380(1)(a)



# EXHIBIT "C"

# Third Information Sworn,
# May 2, 2008

THIS IS EXHIBIT _"C"_ TO THE
AFFIDAVIT OF _Darren Townley_
SWORN BEFORE ME
THIS _16 th_ DAY OF _June_ 20 _08_

_A Commissioner, etc._

CANADA
PROVINCE OF ONTARIO
PROVINCE DE L'ONTARIO

TORONTO REGION
RÉGION DE TORONTO

Information of
Dénonciation de:
**Toronto Police Service**
of/de

**Peace Officer**
(occupation/profession)

The Informant says
Le dénonciateur

that he/she believes on reasonable grounds that
déclare qu'il a des motifs raisonnables de croire que

1) Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did attempt to murder Felix TWUM by shooting him contrary to the Criminal Code

2) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did attempt to murder Felix TWUM while using a firearm by shooting him contrary to the Criminal Code

(3) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did maim Felix TWUM thereby committing an aggravated assault contrary to the Criminal Code

(4) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region with intent to endanger the life of Felix TWUM discharge a firearm at Felix TWUM contrary to the Criminal Code

(5) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did in committing an assault on Felix TWUM use a weapon to wit a firearm. contrary to the Criminal Code

(6) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region did, without lawful excuse, point a firearm, to wit, a handgun, at Felix TWUM, CONTRARY TO THE CRIMINAL CODE OF CANADA.

(7) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region , did use a firearm to wit a handgun while committing the indictable offence of  Aggravated Assault, contrary to the Criminal Code.

(8) and further that Anthony REYNOLDS on or about the 22nd day of December in the year 2005 in the City of Toronto, in the Toronto Region , did use a firearm to wit a handgun while committing the indictable offence of Assault with a Weapon, contrary to the Criminal Code.

MAY 0 2 2008

/Long Form - One or More Accsd. /
Formule complete - Un ou plusieurs prévenus)

YC 0935 (rev. 05/2008)

OFFICE FOR DISABILITY ISSUES
INFORMATION SERVICES FOR BARRIER FREE COURTS
1-800-387-4456
TORONTO AREA 326-0111

OFFICE DES AFFAIRES DES PERSONNES HANDICAPÉES
SERVICE D'INFORMATION SUR LES TRIBUNAUX À ACCÈS FACILE
1-800-387-4456
RÉGION DE TORONTO  326-0111

(Continued on page No. 2 within)
(Suite à la page 2 ci-incluse)

before me at the City of Toronto, in the Province of Ontario
sous devant moi dans la ville de Toronto, dans la province de l'Ontario

|  | day of |  | , yr. | 2008 |  | Informant/Dénonciateur |
|--|--------|--|-------|------|--|------------------------|
|  | jour de |  | , an | | | |

Justice of the Peace / Juge de paix    P. LEWIN

| earance Notice/ | ☐ Promise to Appear/ | ☐ Recognizance | for | | , yr. |
|-----------------|----------------------|----------------|-----|--|-------|
| tion à comparaître | Promesse de comparaître | Engagement pour | le | | , an |

| ☐ Confirmed on | , yr. |
|----------------|-------|
| Confirmé(e) le | , an |

Justice of the Peace
Juge de paix

| Crown Elects to Proceed Choix de la Couronne | ☐ Summarily Procédure sommaire | ☐ By Indictment Mise en accusation | ☐ Summary Conviction Offence(s) Infraction punissable sur déclaration de culpabilité par procédure sommaire | ☐ Indictable Offence(s) Infraction punissable par mise en accusation |
|---|---|---|---|---|

| ate te | Accused Accusé(e) | Elects Trial by/Choix d'un procès devant | | | | Preliminary Hearing Requested Enquête préliminaire demandée | | Justice's Initials Initiales du juge | Abs. Juris. Jurid. abs. | Pleads/Plaidoyer | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Superior Court/ Cour supérieure | | Ontario Court Cour de l'Ontario | | | | | | | |
| | | Judge Juge | Judge & Jury/Juge et Jury | Judge on Counts Juge pour les chefs d'accusation | | Yes Oui | No Non | | | Guilty to Counts/ coupable pour les chefs d'accusation | Not Guilty to Counts/ non coupable pour les chefs d'accusation |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| ate te | Accused Accusé(e) | Committed (or) Ord. Std. Trial *On Counts/ Interné(e) (ou) renvoyé à son procès * pour les chefs d'accusation | Discharged on Counts libéré(e) pour les chefs d'accusation | Found Guilty on Counts reconnu(e) coupable pour les chefs d'accusation | Not Guilty on Counts Non coupable pour les chefs d'accusation |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| consent of accused and prosecutor, without taking or recording c le consentement de l'accusé(e) et du poursuivant sans recueillir ou consigner | ☐ (a) any evidence(or) (a) de preuve (ou) | (or) (ou) | ☐ (b) further evidence (b) de preuve supplémentaire |
|---|---|---|---|

MAY 0 2 2008

A. Frederick

Judge/Juge

| :tim Surcharge $ | Time to Pay |
|------------------|-------------|
| ramende compensatoire | $ Délai de paiement |

Informant / Dénonciateur: G. Sonodha

Date Sworn / Date d'assermentation: May 12, 2008

Officer / Agent de police: TOWNLEY   No. / No 573...

Div. 31   Dist.

---

No. of Information / N° de la dénonciation

Return Date of Summons / Sommation rapportée le
_____, yr. /
                        an _____

INFORMATION Against / DÉNONCIATION visant

Address / Adress

CHARGE: / ACCUSATION:

---

No. of Information / N° de la dénonciation

Return Date of Summons / Sommation rapportée le
_____, yr. /
                        an _____

INFORMATION Against / DÉNONCIATION visant

Address / Adress

CHARGE: / ACCUSATION:

| Summons / Sommation | Show Cause Audience de justification | Warrant 1st Mandat en 1re instance | Relayed Information Dénonciation déposée de nouveau |
| --- | --- | --- | --- |
| Reportable M.V. Offence (H.T.A. 199) Rapport V.M. (Code de la route 199) | | C.V.O.R. No. (Commercial Vehicles Only) Numéro C.E.C.V.U. (véhicules utilitaires seulement) | |

Birth Date / Date de naissance — Day/Jour | Month/Mois | Year/Année

Sex / Sexe

Was defendant owner? Le défendeur était-il propriétaire?  Yes/Oui  No/Non

Driver's Licence Number / Numéro du permis de conduire

Plate No. / Numéro de plaque

Involves a Collision Infraction reliée à un accident

Courtroom / Salle d'audience

AU / (Au)

---

No. of Information / N° de la dénonciation

Return Date of Summons / Sommation rapportée le
_____, yr. /
                        an _____

INFORMATION Against / DÉNONCIATION visant

ANTHONY REYNOLDS

Address / Adress

CHARGE: / ACCUSATION:

See attached Appendix A

| Summons / Sommation | Show Cause Audience de justification | Warrant 1st Mandat en 1re instance | Relayed Information Dénonciation déposée de nouveau |
| --- | --- | --- | --- |
| Reportable M.V. Offence (H.T.A. 199) Rapport V.M. (Code de la route 199) | | C.V.O.R. No. (Commercial Vehicles Only) Numéro C.E.C.V.U. (véhicules utilitaires seulement) | |

| Sex / Sexe | Birth Date / Date de naissance — Day/Jour | Month/Mois | Year/Année |
| --- | --- | --- | --- |
| M | 22 | Sep | 1977 |

Was defendant owner? Le défendeur était-il propriétaire?  Yes/Oui  No/Non

Driver's Licence Number / Numéro du permis de conduire

Plate No. / Numéro de plaque

Involves a Collision Infraction reliée à un accident

Courtroom / Salle d'audience

AU / (Au)

1935 (rev. 05/2006)

---

No. of Information / N° de la dénonciation

Return Date of Summons / Sommation rapportée le
_____, yr. /
                        an _____

INFORMATION Against / DÉNONCIATION visant

Address / Adress

CHARGE: / ACCUSATION:

| Summons / Sommation | Show Cause Audience de justification | Warrant 1st Mandat en 1re instance | Relayed Information Dénonciation déposée de nouveau |
| --- | --- | --- | --- |
| Reportable M.V. Offence (H.T.A. 199) Rapport V.M. (Code de la route 199) | | C.V.O.R. No. (Commercial Vehicles Only) Numéro C.E.C.V.U. (véhicules utilitaires seulement) | |

Sex / Sexe

Birth Date / Date de naissance — Day/Jour | Month/Mois | Year/Année

Was defendant owner? Le défendeur était-il propriétaire?  Yes/Oui  No/Non

Driver's Licence Number / Numéro du permis de conduire

Plate No. / Numéro de plaque   Informant / Dénonciateur

Involves a Collision Infraction reliée à un accident

Courtroom / Salle d'audience

AU / (Au)

pendix A                                                                 Page  1 of  1

Accused Name and Address                                              DOB       SEX
REYNOLDS, ANTHONY                                              1977.09.22   M

Officer

=======================================================================
Count Charge                                                        Offence Date
=======================================================================
  1  Attempted murder C.C. 239                                      2005.12.22
  2  Attempted murder while using a firearm C.C. 239(a)             2005.12.22
  3  Aggravated assault C.C. 268                                    2005.12.22
  4  Discharge firearm endanger life C.C. 244(b)                    2005.12.22
  5  Assault with weapon C.C. 267(a)                                2005.12.22
  6  Pointing a firearm C.C. 87(1)                                  2005.12.22
  7  Use Firearm to commit indictable offence C.C. 85(1)(a)         2005.12.22
  8  Use Firearm to commit indictable offence C.C. 85(1)(a)         2005.12.22

Total of 8 charges for accused REYNOLDS, ANTHONY



MAY 0 2 2008
A. Frederick

# EXHIBIT "D"

# Counterfeit Ontario Drivers Licence in name of "Oval Thompson"

THIS IS EXHIBIT ___"D"___ TO THE
AFFIDAVIT OF _Darren Townley_
SWORN BEFORE ME
THIS _16th_ DAY OF _June_ 20_08_
_____
A Commissioner, etc.





# EXHIBIT "E"

## Ontario Drivers Licence Photo of Accused Anthony REYNOLDS

## Drivers Licence #R2988-05317-70922

THIS IS EXHIBIT " E " TO THE
AFFIDAVIT OF Darren Townley
SWORN BEFORE ME
THIS 6 DAY OF June 20 08

A Commissioner, etc.



Image View - Please Acknowledge

REYNOLDS,ANTHONY,A
R2988-05317-70922
Photo Capture Date and Time
2005/11/30 15:24:27

Enter-Continue

Viewing Image Set, CID=MTO257267117

NUM

# EXHIBIT "F"

# Toronto Police Photo Line-up

# #06-001014

# Viewed by Felix TWUM

THIS IS EXHIBIT ___"F"___ TO THE
AFFIDAVIT OF _Darren Townley_
SWORN BEFORE ME
THIS _16th_ DAY OF _June_ 20 _08_

_____
A Commissioner, etc.

**IDENTIFICATION LINE-UP REPORT**

# PHOTOGRAPHIC LINE-UP # 06-001014 DATE: 2006-03-~~26~~27 ₱ A.C 0967 f.t.

## WITNESS: Felix Twum

You are about to be shown a group of photographs in relation to ___SHOOTING___

σ **Before you view these photographs, I am going to provide you with directions for this procedure:**
- The person(s) who committed the crime may or may not be in this group of photographs.
- You are in no way obligated to select anyone.
- Study each photograph carefully before making any comments.
- Consider that the photographs could be old or new, and the person may appear older or younger.
- A person's appearance may appear altered by changes to their hair style or colour, growing or shaving of facial hair, gaining or losing of body weight, adding or removing of a tattoo or jewellery, or by wearing a form of head dress.
- Facial structures such as nose, eyes, lips, cheek bones and chin usually remain consistent.

**TIME:** 1233

⇒ **QUESTION:** Do you know, or have you seen any of these persons before under any circumstances, if so where and when?

⇒ **RESPONSE:** ___Thats the person that shot me. #3___

Signature of WITNESS _____

Signature of INVESTIGATOR _____

# oronto Police Service
## Lineup #: 06-001014

2006/03/06 09:07
**Page:** 1 **of:** 1

**Report Date:** 2006/03/06
**Created By:** 88993

**Printed By:** 88993
**Requested By:** 88993



Date _____ Time _____ Investigator _____ Witness _____

# EXHIBIT "G"

## Florida State Drivers Licence Photo
## of Accused Anthony REYNOLDS

THIS IS EXHIBIT _____"G"_____ TO THE
AFFIDAVIT OF __Darren Townley__
SWORN BEFORE ME
THIS __16th__ DAY OF __June__ 20 08
_____
A Commissioner, etc.



IN THE MATTER of the request by Canada for the extradition of Anthony REYNOLDS with respect to offences under the *Criminal Code of Canada*

---

## AFFIDAVIT OF DARREN TOWNLEY

---

ONTARIO

MINISTRY OF THE ATTORNEY GENERAL

Crown Law Office – Criminal

720 Bay Street, 10th Floor

Toronto, Ontario

CANADA

M5G 2K1